OPINION OF THE COURT
Memorandum.
Order unanimously affirmed without costs.
In moving to vacate the default final judgment, tenant alleged, as a meritorious defense, that he is protected from eviction by the Martin Act (General Business Law § 352-eeee). He predicates his claim on the decisions in Paikoff v Harris (178 Misc 2d 366, mod 185 Misc 2d 372), which held that a tenant who rents an apartment from a sponsor after the transfer of title to the cooperative corporation is protected as a nonpurchasing tenant {but see, Park W. Vil. v Nishioka, NYLJ, May 26, 1999, at 25, col 2 [Civ Ct, NY County], affd 187 Misc 2d 243; Pembroke Sq. Assocs. v Coppola, NYLJ, May 5, 1999, at 25, col 2 [Civ Ct, Queens County]).
In the Park W. and Pembroke Sq. cases, the courts held that a tenant who rents from a sponsor subsequent to the transfer of title to the cooperative corporation falls within an exception to protection for those who sublet from a “purchaser under the plan,” which term is defined to mean the “person who owns the shares allocated to a dwelling unit” (General Business Law § 352-eeee [1] [d]). We do not agree with their determination that a sponsor is a “purchaser under the plan.”
The Martin Act must be understood in the light of the practice that it was designed to regulate. In that practice, a sponsor is a seller not a purchaser. A sponsor is the person or entity that makes “a public offering or sale * * * of securities consisting primarily of shares * * * in real estate” (13 NYCRR 18.1 [c] [1]). Both before and after the transfer of title to the cooperative corporation, the sponsor offers to sell the shares under his control pursuant to the offering plan, which plan he must continue to update after the closing of title (13 NYCRR 18.3 [w] [11]). Thus, after the closing of title, the sponsor remains the seller under the plan, not the “purchaser under the plan.” Had the Legislature intended to depart from this conventional understanding, it would have had to expressly state that the term “purchaser under the plan” would include a sponsor.
Moreover, under long-standing practice, the shares held by the sponsor after the closing of title are considered “unsold *444 shares” (see, e.g., People v Lexington Sixty-First Assocs., 38 NY2d 588, 598-599 [1976]). Indeed, paragraph 38 (a) of the standard proprietary lease has long provided that “unsold shares” retain their character as unsold shares until they become the property of a purchaser for occupancy (see, e.g., Sims v Darwood Mgt., 147 AD2d 373, 374; 5 New York Practice Guide: Real Estate § 39.08 [37] [Matthew Bender & Co.]). In addition, under the Attorney General’s regulations, every offering plan must state:
“[U]nsold shares shall be any shares not subscribed to and fully paid for prior to closing. At or prior to closing, unsold shares must be acquired by the sponsor or financially responsible individuals produced by the sponsor. A holder of unsold shares is the sponsor or any individual designated to hold unsold shares by the sponsor. Such shares shall cease to be unsold shares when purchased by a purchaser for occupancy” (13 NYCRR 18.3 [w] [1]).
Again, had it been the Legislature’s intention to depart from this long-established understanding that the shares held by a sponsor are unsold, it was incumbent upon the Legislature to specifically express this departure in the statute.
That the Legislature did not intend such a departure may also be seen from the language of an earlier statute (operative in Westchester, Rockland and Nassau Counties) upon which the current statute was modeled. The earlier statute (L 1978, ch 544, § 3) defined a “purchaser under the plan” as a “person who owns the shares allocated to only one dwelling unit” (emphasis added). It is clear from this definition that the Legislature did not intend to include sponsors in the definition of “purchaser under the plan.” While we are not informed as to why the Legislature omitted the words “only one” from the current definition, there is no reason to believe that it did so to allow for the inclusion of sponsors.
The Martin Act provides that “a person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant” (General Business Law § 352-eeee [1] [e]). Inasmuch as there can only be a “purchaser under the plan” — defined as the owner of the shares — after the closing of title and the issuance of shares, it is clear that this sentence is referring specifically to the period after the closing of title. Because it excepts from protection only those who sublet from a “purchaser under the plan,” it necessarily implies that persons who sublet after the closing of title from those who are *445 not purchasers under the plan (i.e., sponsors) are protected under the statute. Yet, under the Park W. and Pembroke Sq. decisions — which limit the class of “non-purchasing tenant[s]” to tenants who rent prior to the closing date — no tenant who rents after the closing date is protected under the statute, and the statute’s exception of tenants who sublet from “purchaser [s] under the plan” is rendered superfluous.
In Park W. (supra), the Appellate Term, First Department, correctly stated that the legislative finding expressed the necessity of “preventive action by the legislature in restricting rents and evictions during the process of conversion” (L 1982, ch 555, § 1). However, the “process of conversion” does not end upon the transfer of title to the corporation. In the case of non-eviction plans, the statute restricts rents and evictions for as long as there are nonpurchasing tenants in possession. Thus, the Legislature’s reference to the need to restrict “rents and evictions during the process of conversion” indicates that in its view the process of conversion does not end until all unsold shares are sold. That the conversion process does not end with the closing of title is also clear from the Attorney General’s regulations, which require that sponsors and holders of unsold shares “amend the plan to provide current and accurate information about the offering * * * until the shares held as unsold shares have been sold to bona fide purchasers” (13 NYCRR 18.3 [w] [11]).
For these reasons, we adhere to our determination in Paikoff that tenants who rent from sponsors after the closing of title are protected under the Martin Act. However, tenant’s claim of a meritorious defense based on Paikoff must nevertheless be rejected because the Martin Act defense is unavailable where, as here, the building was converted prior to the effective date of the Act. Accordingly, we affirm the order denying tenant’s motion to vacate the default final judgment.
Scholnick, P. J., Aronin and Patterson, JJ., concur.